## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| WILLIAM BLASINGAME, | : | |
| Plaintiff, | : | Civil Action File |
| | : | No. _____ |
| vs. | : | |
| | : | |
| CORTEZ MCDOWELL, individually; and | : | |
| DANIEL SHUMATE, individually; | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff William Blasingame ("Plaintiff") files this lawsuit asserting claims pursuant to 42 U.S.C. § 1983 against Defendants Cortez McDowell ("Defendant McDowell") and Daniel Shumate ("Defendant Shumate"), both of whom were employees of the Locust Grove Police Department, for excessive use of force during a seizure of Plaintiff on July 18, 2023. Plaintiff alleges as follows:

### Introduction

1.     On July 18, 2023, police officers attacked an elderly man, the Plaintiff, who was in his car at a gas station with a female passenger who had just had a major dental procedure in which her teeth were extracted, causing bleeding from her mouth. Plaintiff had assisted the woman with transportation from her dentist's office.

2.     A person contacted the police with these bare facts, and the police officers took the giant leap of blaming the man for the woman's mouth bleed. The police officers had no evidence or facts or allegations of wrongdoing and went to the

gas station. Upon seeing the woman with the bloody mouth, the police officers attacked and beat the Plaintiff, without any information indicating wrongdoing by the Plaintiff.

3.      The officers had actual knowledge that Plaintiff was not a threat because he complied with their commands, did not have any weapons, and was elderly.

4.      The force used was excessive and in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

5.      The officers later manufactured a story that Plaintiff had for some unknown reason stated to the police officers that "he did it" to the woman's mouth. Such an assertion is unsupported by any bodycam footage, is false, and shows the lengths at which Defendants will go to defend themselves against clear constitutional violations.

## The Parties, Jurisdiction & Venue

2.      Plaintiff William Blasingame is a citizen and resident of Georgia.

3.      Defendant McDowell is a citizen and resident of Georgia.

4.      Defendant McDowell is sued in his individual capacity only.

5.      Defendant McDowell is subject to the jurisdiction of this Court.

6.      Defendant Shumate is a citizen and resident of Georgia.

7.      Defendant Shumate is sued in his individual capacity only.

8.     Defendant Shumate is subject to the jurisdiction of this Court.

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the events and/or omissions giving rise to the claims occurred in this district.

**Facts**

11.     On July 18, 2023, at around 5:00 p.m., Plaintiff was the driver of a car parked at the gas pump to get gas at a Circle K gas station in Locust Grove, Georgia.

12.     Katrina Flaherty and Ethan Recker were passengers in Plaintiff's vehicle.

13.     Mr. Recker was in the front passenger seat of the vehicle.

14.     Ms. Flaherty was in the rear passenger seat of the vehicle.

15.     Ms. Flaherty was bleeding due to her teeth being extracted about forty-five minutes earlier, in preparation for receiving dental implants.

16.     Defendant McDowell was a police officer with the Locust Grove Police Department.

17.     At all times during his encounter with Plaintiff on July 18, 2023, Defendant McDowell was acting under color of law.

18.     Defendant Shumate was a police officer with the rank of Sergeant with the Locust Grove Police Department.

19.   At all times during his encounter with Plaintiff on July 18, 2023, Defendant Shumate was acting under color of law.

20.   Before their encounter with Plaintiff on July 18, 2023, Defendants Shumate and McDowell were not present at the Circle K where Plaintiff was parked.

21.   While Plaintiff and the passengers were parked, a person identified as a "concerned citizen" told Defendants Shumate and McDowell that he was worried about activity at the Circle K.

22.   The person had not witnessed any criminal activity at the Circle K on July 18, 2023, by Plaintiff or anyone else.

23.   The person did not tell Defendants McDowell and Shumate that he had seen any crime take place at the Circle K on July 18, 2023.

24.   The person did not witness Plaintiff engage in any activity creating any threat of harm to anyone present at Circle K.

25.   The person did not tell Defendants McDowell and Shumate that he had witnessed Plaintiff engage in any activity creating any threat to anyone or any property at Circle K.

26.   After speaking with the person, Defendants McDowell and Shumate drove from Henry County Station 2 to the Circle K gas station.

27.   Defendant McDowell approached Plaintiff's vehicle from the passenger side of the vehicle.

28.    Ms. Flaherty opened her door and began explaining to Defendant McDowell that she had just had teeth extracted in a major dental procedure.

29.    Defendant McDowell did not wait for Ms. Flaherty to complete a single sentence and did not listen to her.

30.    Defendant McDowell moved away from Ms. Flaherty around the front of the vehicle.[1]

31.    Defendant McDowell approached Plaintiff, who was sitting in the driver seat with the vehicle parked and engine off, pointing his taser at Plaintiff.

32.    Defendant McDowell demanded that Plaintiff get out of the vehicle.

33.    Plaintiff opened the car door with his hand up and asked what was the reason that he was being requested to get out of the car.

34.    As he got out of his vehicle, Plaintiff did not pose a threat of harm to Defendants or anyone else.

35.    Defendant McDowell demanded that Plaintiff turn around.

36.    Plaintiff was not resisting and in fact was turning around when Defendant McDowell grabbed Plaintiff's left arm and forcibly turned Plaintiff and began to handcuff him.

---

[1] Plaintiff notes that the subsequent events were captured on video by Defendant McDowell's body camera. The video has been reviewed by Plaintiff and his counsel. As noted below, it is occasionally difficult to determine which Defendant committed a particular act or made a particular statement.

37.     Plaintiff did not threaten either Defendant as he turned around.

38.     Plaintiff did not pose a threat of harm to Defendants or anyone else as he turned around.

39.     Plaintiff could do nothing other than to ask the Defendants "why are y'all doing this."

40.     Defendant Shumate said, "Because he's telling you what to do and you ain't fucking doing it, that's why."

41.     During this interaction, Ms. Flaherty was trying to get the officers' attention to tell them she had been to a dentist's appointment and that her teeth had been removed. The officers refused to listen to Ms. Flaherty and attacked Plaintiff.

42.     At no time during this portion of the encounter did Plaintiff pose a threat of harm to Defendants or anyone else.

43.     Defendant McDowell shoved Plaintiff face down against a gas pump.

44.     Defendant McDowell and Defendant Shumate put Plaintiff's left arm in handcuffs.

45.     Defendant McDowell or Defendant Shumate yelled, "Stop fucking moving or I'm going to break your fucking—"

46.     As Defendant McDowell yelled, Defendant McDowell and/or Defendant Shumate punched Plaintiff multiple times.

47.    As Defendant McDowell yelled, Defendant McDowell and Defendant Shumate threw Plaintiff to the ground.

48.    As Plaintiff went to the ground, Plaintiff's hands remained behind his back.

49.    With Plaintiff on the ground with hands behind his back, Defendant McDowell and/or Defendant Shumate punched Defendant at least two additional times.

50.    Plaintiff complained in pain to the officers that he had bad shoulders.

51.    In response, Defendant McDowell yelled, "I will pop your fucking ass."

52.    Defendant McDowell and Defendant Shumate then placed handcuffs on Plaintiff's right arm while he was on the ground.

53.    Defendant Shumate pushed his knee into Plaintiff while Plaintiff was lying face down on the ground.

54.    About fifteen seconds elapsed between the time Plaintiff got out of the car the time Defendants began punching Plaintiff.

55.    About thirty seconds elapsed between the time Plaintiff got out of the car and the time Defendants had Plaintiff on the ground in handcuffs.

56.    Throughout this attack on Plaintiff, Ms. Flaherty can be heard in the video trying to get the officers' attention to explain the dental procedure.

57.     Finally, after Plaintiff had been handcuffed, beaten, and thrown to the ground, the officers allowed Ms. Flaherty to explain that her mouth condition was solely related to the dental procedure performed.

58.     When Defendants finally took the time to speak with Ms. Flaherty, Defendants McDowell and Shumate knew there was no reasonable basis to detain Plaintiff.

59.     When Defendants finally took the time to speak with Ms. Flaherty, Defendants McDowell and Shumate knew there was no reasonable basis to arrest Plaintiff.

60.     Everyone present at the scene told Defendants that they had not seen Plaintiff commit any crime.

61.     As a result of conversations with witnesses, Defendants McDowell and Shumate knew there was no reasonable basis to detain Plaintiff.

62.     As a result of their conversations with witnesses, Defendants McDowell and Shumate knew there was no reasonable basis to arrest Plaintiff.

63.     An unidentified individual parked next to Plaintiff's car questioned Defendants McDowell and Shumate about the basis for any arrest of Plaintiff and inquired whether Plaintiff was under arrest.

64.     Defendant Shumate said to the individual, "Shut the fuck up or you can go to jail too."

65.    After several minutes in handcuffs, Plaintiff was ordered into the back of a police car.

66.    Upon being put in the back of the police car, an unidentified officer seized Plaintiff's phone without explanation.

67.    The unidentified officer dropped Plaintiff's phone on the ground, causing its screen to become cracked.

68.    While Plaintiff was in the back of the police car, Defendants McDowell and Shumate discussed the situation with an unidentified individual in an unmarked police vehicle. The video produced by the Locust Grove Police Department does not provide audio of these discussions.

69.    While Plaintiff was in the back of a patrol car, Defendant Shumate stated to Defendant McDowell: "I'm gonna get suspended so it's all good. I'll be suspended next week."

70.    Seventeen minutes after being put in handcuffs, Defendant McDowell approached the police car in which Plaintiff was being detained.

71.    Upon opening the door, he stated to Plaintiff, "I'm just coming to make sure you okay for right now."

72.    Plaintiff requested that his handcuffs be removed.

73.    Defendant McDowell began inserting a key into the handcuffs.

74.    Plaintiff stated that he would be gathering body cam footage.

75.     Defendant McDowell retaliated to this simple statement and stopped removing the handcuffs, stating, "These handcuffs aren't coming off 'cause you're going to jail." Only after this statement did Defendant McDowell change his mind and make the decision to arrest Plaintiff.

76.     Defendant McDowell slammed the door, then reopened the door and stated to Plaintiff was under arrest and would be going to jail.

77.     At no time during the encounter between Plaintiff and Defendants was Plaintiff a threat to the safety of any person, including Defendants and all officers on the scene.

78.     At no time during the encounter between Plaintiff and Defendants did Plaintiff present any threat of bodily harm to anyone.

79.     At no time during the encounter between Plaintiff and Defendants did Defendants fear for their own safety or the safety of another person.

80.     At no time during the encounter between Plaintiff and Defendants did Plaintiff attempt to escape.

81.     At no time during the encounter between Plaintiff and Defendants did Defendants have any reasonable belief that Plaintiff had committed any crime of any severity.

82.     At no time during any part of the encounter between Plaintiff and Defendants, did Plaintiff actively resist arrest.

83.    At no time during any part of the encounter between Plaintiff and Defendant, did Defendant have any reason to believe Plaintiff was going to commit a forcible felony.

84.    At no time during the encounter between Plaintiff and Defendants did Plaintiff commit any action that would interfere with Defendants' ability to perform any investigation.

85.    Defendants wrote a false field case report that claimed that Plaintiff stated "I did it" when the officer asked about Ms. Flaherty's mouth. This is not true. and there is no bodycam showing any such statement.

86.    This is a case caught on video. The video tells the story of clear excessive use of force and abuse of police power.

## Count One - Excessive Force During Investigative Stop
## Against Defendant McDowell

87.    Plaintiff brings this count brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments.

88.    At all times on July 18, 2023, Defendant McDowell was acting under color of law.

89.    Defendant based his approach of Plaintiff (with a taser pointed at Plaintiff) solely on information provided by a "concerned citizen."

90.     Defendant McDowell used excessive force in effecting an investigative stop of Plaintiff, in violation of his rights under the Fourth and Fourteenth Amendments.

91.     At no time prior to the use of force against Plaintiff did Defendant McDowell corroborate that any crime had actually been committed by Plaintiff.

92.     At no time on July 18, 2023, did Plaintiff present any immediate danger to Defendant McDowell.

93.     At no time on July 18, 2023, did Plaintiff present a physical threat to Defendant Shumate.

94.     At no time on July 18, 2023, did Plaintiff present a physical threat to anyone else present.

95.     At no time on July 18, 2023, did Plaintiff attempt to use any force against any officer.

96.     At no time on July 18, 2023, did Plaintiff present any risk of escape.

97.     At no time on July 18, 2023, did Plaintiff interfere with Defendant McDowell's or any other officer's investigation.

98.     When asked to exit his vehicle, Plaintiff did so, with his hands up and with clear indication that he was capitulating to Defendants' demands.

99.     Once Plaintiff exited the vehicle, Defendant McDowell knew that Plaintiff was an elderly individual.

100.   Once Plaintiff exited the vehicle, Defendant McDowell knew that Plaintiff was not attempting to access any weapon.

101.   Plaintiff did not at any time make any move that threatened the safety of Defendant McDowell or of any other person present.

102.   Defendant McDowell, at all times before their use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because of Plaintiff's age and physical build.

103.   Defendant McDowell, at all times before their use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because Plaintiff was complying with Defendants' commands.

104.   Plaintiff was complying with Defendant McDowell's instruction to turn around when Defendant McDowell began using force against Plaintiff.

105.   Plaintiff had a clearly established right to ask for the basis of his detention or his arrest.

106.   Defendant McDowell pushed Plaintiff's body face-down onto a metal gas pump.

107.   Defendant McDowell, in pushing Plaintiff face-down into a metal gas pump, acted maliciously and sadistically.

108.   Before and when Defendant McDowell pushed Plaintiff face-down into a metal gas pump, Defendant McDowell knew that Plaintiff was not a threat of harm to anyone.

109.   No reasonable officer would believe that pushing Plaintiff face-down onto a gas pump was necessary in the situation at hand.

110.   Defendant McDowell punched Plaintiff multiple times while Plaintiff was standing.

111.   No reasonable officer would believe that punching Plaintiff was necessary in the situation at hand.

112.   Defendant McDowell, in punching Plaintiff multiple times while Plaintiff was standing, acted maliciously and sadistically.

113.   Defendant McDowell then yelled at Plaintiff that he was "going to break your fucking—"[2]

114.   No reasonable officer would believe that threatening to inflict severe bodily harm on Plaintiff was necessary in the situation at hand.

115.   In threatening to inflict severe bodily harm on Plaintiff, Defendant McDowell acted maliciously and sadistically.

---

[2] Plaintiff cannot be sure whether Defendant McDowell or Defendant Shumate made this threat.

116.   Defendant McDowell threw Plaintiff to the ground while holding his arms.

117.   No reasonable officer would believe that throwing Plaintiff to the ground while holding his arms was necessary in the situation at hand.

118.   Defendant McDowell punched Plaintiff multiple times while Plaintiff was on the ground.

119.   No reasonable officer would believe that punching Plaintiff while he was on the ground was necessary in the situation at hand.

120.   Defendant McDowell, in punching Plaintiff while he was on the ground, acted maliciously and sadistically.

121.   Defendant McDowell acted with the intention of causing injury to Plaintiff.

122.   Defendant McDowell's actions caused injuries and damages to Plaintiff for which Plaintiff has sought medical treatment.

### Count Two - Excessive Force During Investigative Stop
### Against Defendant Shumate

123.   Plaintiff brings this count brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments.

124.   At all times on July 18, 2023, Defendant Shumate was acting under color of law.

125.   Defendant Shumate used excessive force in effecting an investigative stop of Plaintiff, in violation of his rights under the Fourth and Fourteenth Amendments.

126.   At no time prior to the use of force against Plaintiff did Defendant Shumate corroborate that any crime had actually been committed by Plaintiff.

127.   At no time on July 18, 2023, did Plaintiff present any immediate danger to Defendant Shumate.

128.   At no time on July 18, 2023, did Plaintiff present a physical threat to Defendant McDowell.

129.   At no time on July 18, 2023, did Plaintiff present a physical threat to anyone else present.

130.   At no time on July 18, 2023, did Plaintiff attempt to use any force against any officer.

131.   At no time on July 18, 2023, did Plaintiff present any risk of escape.

132.   At no time on July 18, 2023, did Plaintiff interfere with Defendant Shumate's or any other officer's investigation.

133.   When asked to exit his vehicle, Plaintiff exited with his hands up and with clear indication that he was capitulating to Defendants' demands.

134.   Once Plaintiff exited the vehicle, Defendant Shumate knew that Plaintiff was an elderly individual.

-16-

135.   Once Plaintiff exited the vehicle, Defendant Shumate knew that Plaintiff was not attempting to access any weapon.

136.   Plaintiff did not at any time make any move that threatened the safety of Defendant Shumate or any other person present.

137.   Defendant Shumate, at all times before their use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because of Plaintiff's age and physical build.

138.   Defendant Shumate, at all times before their use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because Plaintiff was complying with Defendants' commands.

139.   Plaintiff was complying with Defendant McDowell's instruction to turn around when Defendant Shumate began using force against Plaintiff.

140.   Plaintiff had a clearly established right to ask for the basis of his detention or his arrest.

141.   Defendant Shumate pushed Plaintiff's body face-down onto a metal gas pump.

142.   Defendant McDowell, in pushing Plaintiff face-down into a metal gas pump, acted maliciously and sadistically.

143.   Before and when Defendant Shumate pushed Plaintiff face-down into a metal gas pump, Defendant Shumate knew that Plaintiff was not a threat of harm to anyone.

144.   No reasonable officer would believe that pushing Plaintiff face-down onto a gas pump was necessary in the situation at hand.

145.   Defendant Shumate punched Plaintiff multiple times while Plaintiff was standing.

146.   No reasonable officer would believe that punching Plaintiff was necessary in the situation at hand.

147.   Defendant Shumate, in punching Plaintiff multiple times while Plaintiff was standing, acted maliciously and sadistically.

148.   Defendant Shumate then yelled at Plaintiff that he was "going to break your fucking—"[3]

149.   No reasonable officer would believe that threatening to inflict severe bodily harm on Plaintiff was necessary in the situation at hand.

150.   In threatening to inflict severe bodily harm on Plaintiff, Defendant Shumate acted maliciously and sadistically.

---

[3] Again, Plaintiff cannot be sure whether Defendant McDowell or Defendant Shumate made this threat.

151.   Defendant Shumate threw Plaintiff to the ground while holding his arms.

152.   No reasonable officer would believe that throwing Plaintiff to the ground while holding his arms was necessary in the situation at hand.

153.   Defendant Shumate punched Plaintiff multiple times while Plaintiff was on the ground.

154.   No reasonable officer would believe that punching Plaintiff while he was on the ground was necessary in the situation at hand.

155.   Defendant Shumate, in punching Plaintiff while he was on the ground, acted maliciously and sadistically.

156.   Defendant Shumate pushed his knee into Plaintiff while Plaintiff was lying on the ground.

157.   No reasonable officer would believe that pushing a knee into Plaintiff while he was on the ground was necessary in the situation at hand.

158.   Defendant Shumate, in pushing a knee into Plaintiff while he was on the ground, acted maliciously and sadistically.

159.   Defendant Shumate acted with the intention of causing injury to Plaintiff.

160.   Defendant Shumate's actions caused injuries and damages to Plaintiff for which Plaintiff has sought medical treatment.

161.   Defendant Shumate's actions caused injuries and damages to Plaintiff for which Plaintiff has sought medical treatment.

**Count Three – Excessive Force to Effectuate Arrest**
**Against Defendant McDowell**
**42 U.S.C. § 1983**

162.   This Count is pled in the alternative to Count One.

163.   Plaintiff brings this count brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments.

164.   At all times on July 18, 2023, Defendant McDowell was acting under color of law.

165.   Defendant McDowell based his approach of Plaintiff (with a taser pointed at Plaintiff) solely on information provided by a "concerned citizen."

166.   Since at least 1990, it has been clearly established law that information provided by a "concerned citizen" fails to amount to sufficient probable cause.

167.   At no time prior to the use of force against Plaintiff did Defendant McDowell corroborate that any crime had actually been committed by Plaintiff.

168.   Defendant McDowell's forcible removal of Plaintiff from his vehicle constituted an arrest for purposes of the Fourth Amendment.

169.   Defendant McDowell used excessive force to effectuate an arrest, in violation of the Fourth and Fourteenth Amendments.

170.   At no time on July 18, 2023, did Plaintiff present any immediate danger to Defendant McDowell.

171.   At no time on July 18, 2023, did Plaintiff present a physical threat to Defendant Shumate.

172.   At no time on July 18, 2023, did Plaintiff present a physical threat to anyone else present.

173.   At no time on July 18, 2023, did Plaintiff attempt to use any force against any officer.

174.   At no time on July 18, 2023, did Plaintiff present any risk of escape.

175.   At no time on July 18, 2023, did Plaintiff interfere with Defendant McDowell's or any other officer's investigation.

176.   Before seizing Plaintiff, Defendant McDowell did not allow Ms. Flaherty to provide information relating to the subject of Defendant McDowell's investigation.

177.   When asked to exit his vehicle, Plaintiff exited with his hands up and with clear indication that he was capitulating to Defendants' demands.

178.   Once Plaintiff exited the vehicle, Defendant McDowell knew that Plaintiff was an elderly individual.

179.   Once Plaintiff exited the vehicle, Defendant McDowell knew that Plaintiff was not attempting to access any weapon.

180.   Plaintiff did not at any time make any move that threatened the safety of Defendant McDowell or of any other person present.

181.   Defendant McDowell, at all times before his use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because of Plaintiff's age and physical build.

182.   Defendant McDowell, at all times before his use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because Plaintiff was complying with Defendants' commands.

183.   Plaintiff was complying with Defendant McDowell's instruction to turn around when Defendant McDowell began using force against Plaintiff.

184.   Plaintiff had a clearly established right to ask for the basis of his detention or his arrest.

185.   Defendant McDowell pushed Plaintiff's body face-down onto a metal gas pump.

186.   Defendant McDowell, in pushing Plaintiff face-down into a metal gas pump, acted maliciously and sadistically.

187.   Before and when Defendant McDowell pushed Plaintiff face-down into a metal gas pump, Defendant McDowell knew that Plaintiff was not a threat of harm to anyone.

188.   No reasonable officer would believe that pushing Plaintiff face-down onto a gas pump was necessary in the situation at hand.

189.   Defendant McDowell punched Plaintiff multiple times while Plaintiff was standing.

190.   No reasonable officer would believe that punching Plaintiff was necessary in the situation at hand.

191.   Defendant McDowell, in punching Plaintiff multiple times while Plaintiff was standing, acted maliciously and sadistically.

192.   Defendant McDowell then yelled at Plaintiff that he was "going to break your fucking—"[4]

193.   No reasonable officer would believe that threatening to inflict severe bodily harm on Plaintiff was necessary in the situation at hand.

194.   In threatening to inflict severe bodily harm on Plaintiff, Defendant McDowell acted maliciously and sadistically.

195.   Defendant McDowell threw Plaintiff to the ground while holding his arms.

196.   No reasonable officer would believe that throwing Plaintiff to the ground while holding his arms was necessary in the situation at hand.

---

[4] Plaintiff is not sure whether Defendant McDowell or Defendant Shumate made this threat.

197.   In throwing Plaintiff to the ground while holding his arms, Defendant McDowell acted maliciously and sadistically.

198.   Defendant McDowell punched Plaintiff multiple times while Plaintiff was on the ground.

199.   No reasonable officer would believe that punching Plaintiff while he was on the ground was necessary in the situation at hand.

200.   Defendant McDowell, in punching Plaintiff while he was on the ground, acted maliciously and sadistically.

201.   After he knew that Plaintiff had not been involved with any criminal activity, Defendant McDowell increased the intrusiveness of Plaintiff's detention by ordering Plaintiff into the back of a police car.

202.   At no time during the encounter was Plaintiff a threat to the safety of Defendant McDowell or any other police officer.

203.   Defendant McDowell knew within seconds of seizing Plaintiff that Plaintiff had not been involved with any criminal activity.

204.   Defendant McDowell detained Plaintiff even after he knew that Plaintiff had not been involved with any criminal activity.

205.   After he knew that Plaintiff had not been involved with any criminal activity, Defendant McDowell increased the intrusiveness of Plaintiff's detention by ordering Plaintiff into the back of a police car.

206.   After he knew that Plaintiff had not been involved with any criminal activity, Defendant McDowell increased the intrusiveness of Plaintiff's detention by having Plaintiff's cellular phone seized.

207.   Defendant McDowell acted with the intention of causing injury to Plaintiff.

208.   Defendant McDowell's actions caused injuries and damages to Plaintiff for which Defendant McDowell has sought medical treatment.

### Count Four – Excessive Force to Effectuate Arrest
### Against Defendant Shumate

209.   This Count is pled in the alternative to Count Two.

210.   Plaintiff brings this count brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments.

211.   At all times on July 18, 2023, Defendant Shumate was acting under color of law.

212.   Defendant Shumate based his approach of Plaintiff solely on information provided by a "concerned citizen."

213.   Since at least 1990, it has been clearly established law that information provided by a "concerned citizen" fails to amount to sufficient probable cause.

214.   At no time prior to the use of force against Plaintiff did Defendant Shumate corroborate that any crime had actually been committed by Plaintiff.

215. Defendant Shumate's forcible removal of Plaintiff from his vehicle constituted an arrest for purposes of the Fourth Amendment.

216. Defendant Shumate used excessive force to effectuate an arrest, in violation of the Fourth and Fourteenth Amendments.

217. At no time on July 18, 2023, did Plaintiff present any immediate danger to Defendant Shumate.

218. At no time on July 18, 2023, did Plaintiff present a physical threat to Defendant Shumate.

219. At no time on July 18, 2023, did Plaintiff present a physical threat to anyone else present.

220. At no time on July 18, 2023, did Plaintiff attempt to use any force against any officer.

221. At no time on July 18, 2023, did Plaintiff present any risk of escape.

222. At no time on July 18, 2023, did Plaintiff interfere with Defendant Shumate's or any other officer's investigation.

223. Before seizing Plaintiff, Defendant Shumate did not allow Ms. Flaherty to provide information relating to the subject of Defendant Shumate's investigation.

224. When asked to exit his vehicle, Plaintiff exited with his hands up and with clear indication that he was capitulating to Defendants' demands.

225.   Once Plaintiff exited the vehicle, Defendant Shumate knew that Plaintiff was an elderly individual.

226.   Once Plaintiff exited the vehicle, Defendant Shumate knew that Plaintiff was not attempting to access any weapon.

227.   Plaintiff did not at any time make any move that threatened the safety of Defendant Shumate or of any other person present.

228.   Defendant Shumate, at all times before his use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because of Plaintiff's age and physical build.

229.   Defendant Shumate, at all times before his use of force against Plaintiff, knew that Plaintiff was not a threat of harm to anyone because Plaintiff was complying with Defendants' commands.

230.   Plaintiff was complying with Defendant McDowell's instruction to turn around when Defendant Shumate began using force against Plaintiff.

231.   Plaintiff had a clearly established right to ask for the basis of his detention or his arrest.

232.   Defendant Shumate pushed Plaintiff's body face-down onto a metal gas pump.

233.   Defendant Shumate, in pushing Plaintiff face-down into a metal gas pump, acted maliciously and sadistically.

234.   Before and when Defendant Shumate pushed Plaintiff face-down into a metal gas pump, Defendant Shumate knew that Plaintiff was not a threat of harm to anyone.

235.   No reasonable officer would believe that pushing Plaintiff face-down onto a gas pump was necessary in the situation at hand.

236.   Defendant Shumate punched Plaintiff multiple times while Plaintiff was standing.

237.   No reasonable officer would believe that punching Plaintiff was necessary in the situation at hand.

238.   Defendant Shumate, in punching Plaintiff multiple times while Plaintiff was standing, acted maliciously and sadistically.

239.   Defendant Shumate then yelled at Plaintiff that he was "going to break your fucking—"[5]

240.   No reasonable officer would believe that threatening to inflict severe bodily harm on Plaintiff was necessary in the situation at hand.

241.   In threatening to inflict severe bodily harm on Plaintiff, Defendant Shumate acted maliciously and sadistically.

---

[5] Again, Plaintiff is not sure whether Defendant McDowell or Defendant Shumate made this threat.

242.   Defendant Shumate threw Plaintiff to the ground while holding his arms.

243.   No reasonable officer would believe that throwing Plaintiff to the ground while holding his arms was necessary in the situation at hand.

244.   In throwing Plaintiff to the ground while holding his arms, Defendant Shumate acted maliciously and sadistically.

245.   Defendant Shumate punched Plaintiff multiple times while Plaintiff was on the ground.

246.   No reasonable officer would believe that punching Plaintiff while he was on the ground was necessary in the situation at hand.

247.   Defendant McDowell, in punching Plaintiff while he was on the ground, acted maliciously and sadistically.

248.   Defendant Shumate pushed his knee into Plaintiff while Plaintiff was lying on the ground.

249.   No reasonable officer would believe that pushing a knee into Plaintiff while he was on the ground was necessary in the situation at hand.

250.   Defendant Shumate acted with the intention of causing injury to Plaintiff.

251.   Defendant Shumate's actions caused injuries and damages to Plaintiff for which Plaintiff has sought medical treatment.

252.   After he knew that Plaintiff had not been involved with any criminal activity, Defendant Shumate increased the intrusiveness of Plaintiff's detention by ordering Plaintiff into the back of a police car.

253.   At no time during the encounter was Plaintiff a threat to the safety of Defendant Shumate or any other police officer.

254.   Defendant Shumate knew within seconds of seizing Plaintiff that Plaintiff had not been involved with any criminal activity.

255.   Defendant Shumate detained Plaintiff even after he knew that Plaintiff had not been involved with any criminal activity.

256.   After he knew that Plaintiff had not been involved with any criminal activity, Defendant Shumate increased the intrusiveness of Plaintiff's detention by ordering Plaintiff into the back of a police car.

257.   After he knew that Plaintiff had not been involved with any criminal activity, Defendant Shumate increased the intrusiveness of Plaintiff's detention by having Plaintiff's cellular phone seized.

258.   Defendant Shumate acted with the intention of causing injury to Plaintiff.

259.   Defendant Shumate's actions caused injuries and damages to Plaintiff for which Defendant McDowell has sought medical treatment.

**Count Five – False Arrest**

**Against Defendants McDowell and Shumate**

**42 U.S.C. § 1983**

260.   Count Five is pled in the alternative to Counts One through Four.

261.   Plaintiff brings this count brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments.

262.   At all times on July 18, 2023, Defendants McDowell and Shumate were acting under color of law.

263.   The forcible removal of Plaintiff from his vehicle constituted an arrest for purposes of the Fourth Amendment.

264.   Defendants arrested Plaintiff without probable cause.

265.   At the time Defendant McDowell approached Plaintiff's vehicle while pointing his Taser at Plaintiff, there was no probable cause to believe that Plaintiff had committed an offense.

266.   Defendants based their approach of Plaintiff (with a taser pointed at Plaintiff) solely on information provided by a "concerned citizen."

267.   Since at least 1990, it has been clearly established law that information provided by a "concerned citizen" fails to amount to sufficient probable cause.

268.   At no time prior to the use of force against Plaintiff did Defendants corroborate that any crime had actually been committed by Plaintiff.

269.   After arriving at the gas station, Defendants McDowell and Shumate did not gain any information indicating that Plaintiff had committed any offense.

270.   After arriving at the gas station, Defendants McDowell and Shumate did not gain any information indicating that Plaintiff was an immediate threat to any individual.

271.   After arriving at the gas station, Defendants McDowell and Shumate did not gain any information indicating that Plaintiff was attempting to escape.

272.   Defendant McDowell used force to effectuate the false arrest.

273.   Defendant McDowell's use of force caused injuries and damages to Plaintiff for which Plaintiff has sought medical treatment.

274.   Defendant Shumate used force to effectuate the false arrest.

275.   Defendant Shumate's use of force caused injuries and damages to Plaintiff for which Plaintiff has sought medical treatment.

**WHEREFORE**, Plaintiff prays:

A. That all special and general damages be awarded to Plaintiff in an amount shown by the evidence and determined by the enlightened conscience of the jury;

B. That punitive damages be awarded against Defendant when allowable by law in an amount to be determined by the enlightened conscience of the jury to punish this Defendant and deter Defendant and others from similar misconduct in the future;

C. That a trial by jury be had on all issues permitted;

D. That attorneys' fees and expenses of litigation be awarded as authorized under the law;

E. Such other further equitable or monetary relief as the Court deems just and proper.

Dated:          July 31, 2024

HALL & LAMPROS, LLP

/s/ Ricardo Gilb
Ricardo Gilb
Ga. Bar #564635
Andrew Lampros
Ga. Bar #432328

300 Galleria Pkwy SE
Suite 300
Atlanta, GA 30339
Tel.: (404) 876-8100
Fax: (404) 876-3477
ricardo@hallandlampros.com
alampros@hallandlampros.com

*Attorneys for Plaintiff*